1

1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF FLORIDA
2

3                  Judge Erik P. Kimball

4
     In Re:
5
                           Case No. 09-31881-BKC-EPK
6

7    BRITISH AMERICAN INSURANCE
     COMPANY LIMITED,
8
            Debtor.
9
     _____
10

11   EMERGENCY MOTION OF FOREIGN REPRESENTATIVE FOR
     APPLICATION OF AUTOMATIC STAY (4)
12   MOTION FOR ORDER APPROVING NOTICE PROCEDURES (5)
     VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN
13   PROCEEDING OR IN ALTERNATIVE FOREIGN NONMAIN
     PROCEEDING (2)
14

15

16                    October 13, 2009

17

18

19   The above entitled cause came on for hearing before
     the HONORABLE ERIK P. KIMBALL, one of the Judges in
20   the UNITED STATES BANKRUPTCY COURT, in and for the
     SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler
21   Drive, West Palm Beach, Palm Beach County, Florida, on
     October 13, 2009, commencing on or about 1:30 p.m.,
22   and the following proceedings were had:

23

24

25      Reported by: Jacquelyn Ann Jones, Court Reporter

Ouellette & Mauldin Court Reporters  (305)358-8875

2

```
 1
     APPEARANCES:
 2

 3    THE DUBOSAR LAW GROUP, P.A.
      By: HOWARD D. DUBOSAR, ESQUIRE
 4    On behalf of Green Island Holding, LLC
      (Appearing telephonically)
 5

 6    GRAY ROBINSON
      By: LEYZA F. BLANCO, ESQUIRE
 7    On behalf Juan M. Lopez

 8
      Also Present:
 9    Mr. Juan Lopez

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Good afternoon.  This is Judge

2    Kimball.  I'm calling the British American Insurance

3    Company Limited matter.  Could I have appearances,

4    please.  Make sure you use the microphone.

5          MS. BLANCO:  Leyza Blanco on behalf of Mr.

6    Juan Lopez, also known as John Lopez, duly appointed

7    judicial manager for British American Insurance

8    Company Limited.

9          THE COURT:  Good afternoon.  And on the

10   telephone.

11         MR. DUBOSAR:  May it please the Court, this

12   is Howard Dubosar on behalf of a creditor, Green

13   Island Holdings, LLC.

14         THE COURT:  Mr. Dubosar, good afternoon.

15         MS. BLANCO:  I should mention to the Court,

16   Your Honor, that with me today is Mr. Lopez.

17         THE COURT:  Good afternoon, Mr. Lopez.  Have

18   you traveled to the U.S. to be here today, or --

19         MR. LOPEZ:  Yes.

20         THE COURT:  You have, yes.

21         We have a number of matters that were on

22   today, and Mr. Dubosar had asked that this hearing be

23   continued.  I did not continue the hearing in light of

24   your request for an emergency hearing, but I would

25   like you to address why there is an emergency.

4

1          Obviously, you've requested relief under

2     1519, so you have some issues there that you probably

3     want to tell me about.

4          MS. BLANCO:  That's correct, Your Honor.

5          The reason we would ask that the Court not

6     continue this matter without an interim order, at

7     least for the brief period of continuance which we

8     wouldn't object to, and I've so advised Mr. Dubosar

9     via written communication, is because, while Mr.

10    Dubosar and his client argue in their motion to

11    continue that there are not any imminent hearings

12    scheduled against either the proposed debtor or its

13    subsidiary for which we seek temporary stay pending

14    recognition of the verified petition, there has been

15    an expressed threat of a proposed writ of attachment

16    against funds that are property of British American

17    Insurance Company Limited in an investment vehicle,

18    some of which are liquid and as good as cash, and some

19    of which are in an investment vehicle easily

20    accessible and attachable, on an ex parte basis by an

21    alleged creditor.

22         And so with the vehicle available under

23    Florida law for a prejudgment writ of attachment, an

24    exigency absolutely exists for a temporary stay

25    pending a continuance of this matter, should the Court

1   desire to accommodate Mr. Dubosar's schedule, which I

2   have no issue with, but the fact of the matter is,

3   Your Honor, that, although in the two pending pieces

4   of litigation that Mr. Dubosar references in his

5   motion to continue, there are no pending hearings,

6   there is this issue with this fund, which Mr.

7   Dubosar's client has advised of its intention to seek

8   a writ of attachment over, and --

9          THE COURT:  These are funds of the debtor

10   itself and not the affiliate of the debtor?

11          MS. BLANCO:  That's correct, Your Honor.

12          THE COURT:  I realize Mr. Dubosar is the

13   person who is here on the telephone, but the issues

14   inherent in the overall case pending in the Bahamas

15   are much broader than that, so what relief are you

16   asking for today, and are you asking -- you did not

17   ask to shorten the time period for a notice on a final

18   hearing with regard to recognition.

19          MS. BLANCO:  I did not ask that, Your Honor.

20   In fact, I did file a motion, which the Court has also

21   scheduled for today, even though it was not filed as

22   an emergency, to address the notice issues.

23          As the Court may be aware, there is a broad

24   range of operations throughout the Caribbean for the

25   British Insurance -- British American Insurance, and I

1    like to call it Baico, so if the Court will indulge

2    the acronym, it's easier for me than going through the

3    name.

4              But essentially, Your Honor, the issue of

5    notice innately requires that we address how to give

6    notice, not just to American creditors, but to foreign

7    creditors.  And as a result, given the widespread

8    operation of this company, we thought it appropriate

9    to seek an order from Your Honor directing how notice

10   should be given to these foreign creditors, and then

11   allow the time to run to give that adequate notice

12   before the verified petition is ultimately ruled upon

13   and hearing on recognition is ultimately scheduled.

14             For that reason, Your Honor, I don't believe

15   that there's any prejudice to Green Island Holdings,

16   who is seeking to continue the hearings for today,

17   given that there's not going to be a final recognition

18   sought in today's hearing, there's been no shortening

19   of the time.  In fact, if there's no -- if the

20   argument is, there's no imminent danger because

21   there's nothing pending in the cases, then there

22   shouldn't be any harm in this Court entering a stay.

23             Of course, if there's a stay, then there's

24   no prejudgment activity on an ex parte basis that can

25   occur in any of those cases either, and that's, in

1   fact, what we believe is called for under equitable

2   and other grounds, because that is exactly why the

3   judicial manager is a here today seeking that

4   protection on behalf of Baico, because a race to the

5   courthouse is clearly what is intended to be avoided

6   in these proceedings, as well as in proceedings

7   pending all over the Eastern Caribbean.

8            So to allow a creditor to ask for a

9   continuance, and in the interim get ahead of the rest,

10  would be inequitable, and would not be in the best

11  interest of the creditors of Baico.

12           THE COURT:  So putting off the recognition

13  hearing for a moment, the immediate relief, as I

14  understood it under the motion filed -- let's see,

15  which one is it, this is docket entry 4, I believe.

16  No, that's the specific application of the stay.  I

17  guess it is in docket entry 4 -- is an application of

18  some of the provisions of 1519.

19           And if we're going to have a continuance,

20  Mr. Dubosar, I'll get to you in a moment, then I would

21  probably set that next week, at least with regard to

22  continued interim relief under 1519.

23           And so Mr. Dubosar, my question to you is,

24  is there harm to your client in me entering an interim

25  order subject to a continued hearing on the 1519

1    issues, which would probably be Wednesday of next

2    week, it appears it's the only day that I'm available,

3    not afternoon.  What's your response to that, Mr.

4    Dubosar?

5              MR. DUBOSAR:  First of all, with respect to

6    whether there's a stay of the two pending proceedings,

7    one in State Court, one in Federal Court, I don't

8    think there's anything in 1519 that requires a stay of

9    those proceedings.

10             If you look at 1519(a)(1), staying execution

11   against the debtor's assets is really what I'm hearing

12   is the primary claim for urgency here.

13             THE COURT:  Well, execution follows judgment

14   necessarily, and I don't think that's what we're

15   discussing at the moment.

16             MR. DUBOSAR:  Correct.  Our concern is,

17   frankly, that these assets, which are under the

18   control of a money manager, and when I say these

19   assets, assets that belong to the petitioner in this

20   case, British American, are under the control of a

21   money manager in Orlando, and that money manager has

22   received competing demands, not only from British

23   American Bahamas, but also British American Trinidad.

24   And that's the reason why we wanted to tie those up

25   with a prejudgment writ of attachment to make sure

1    that those funds don't leave the country.

2              So I would ask that if any relief is going

3    to be granted that would preclude my client from

4    seeking a prejudgment writ of attachment, which we're

5    willing to recognize that -- for interim relief, at

6    the same time the petitioner should be precluded from

7    removing those assets from the jurisdiction of the

8    United States.

9              As to the litigation against the affiliate,

10   that's going to require a significant evidentiary

11   showing.  It's essentially an injunction, as Your

12   Honor knows, and we would need to have some sort of

13   showing before I think you can enter any sort of stay

14   against the affiliate.

15             And just a couple of things I'd like to

16   point out.  If you want me to stop, I think I've

17   answered your question.

18             THE COURT:  No, please go ahead.  I'm going

19   to address the extension of the stay issue in a

20   moment -- well, let me go back for a moment.  I take

21   back the please go ahead part.  Let's go back just for

22   a moment.

23             In terms of the funds at issue, or the

24   investment in funds at issue, which apparently are in

25   Orlando, is there any objection from the petitioner

1   with regard to tailoring the interim relief between

2   now, and let's say next week, to essentially freeze

3   that account to address the concern raised by Mr.

4   Dubosar?

5           MS. BLANCO:  One second, Your Honor.

6           No, Your Honor, that's not an issue.  In

7   fact, that's exactly what we would like the Court to

8   do.

9           THE COURT:  Okay.  So Mr. Dubosar, I think

10  that probably answers that first concern.

11          But let me ask Ms. Blanco first, with regard

12  to the relief requested in connection with, I'll call

13  it BVI, the wholly owned affiliate.

14          MS. BLANCO:  Yes.

15          THE COURT:  Is that something that you're

16  asking me to address today, or is that something we're

17  going to address in the future?

18          MS. BLANCO:  Well, I think Your Honor, from

19  a temporary standpoint, I think we are asking that the

20  Court address that today.  The reason being, Your

21  Honor, is, at the present time the British American

22  Isle of Venice BVI subsidiary, which is the subject of

23  the litigation, which we're seeking the stay of, does

24  not have its control for purposes of its corporate

25  governance, and at the moment the judicial manager is

1    in the process of trying to get that control in order

2    to speak for it.  And in fact, we've filed papers to

3    that affect in the pending District Court case.

4            But given the Chapter 15 proceeding, and the

5    fact that we're asking this Court for an interim stay

6    for its parent, the parent at the moment is the only

7    entity that has the ability to speak for that

8    subsidiary.  The subsidiary has no directors,

9    according to its papers that were filed in the case

10   before Mr. Lopez was appointed.  And as a result, Your

11   Honor, it would be detrimental for the proposed debtor

12   in this case to have to continue to litigate in that

13   pending BVI matter, pending the official hearing on

14   recognition and a proposed extension of an automatic

15   stay over its subsidiary.

16           So for that reason, Your Honor, we have

17   asked that the Court consider, on an emergency basis,

18   temporarily, given the circumstances, that the Court

19   enter a stay also staying those proceedings pending

20   verification and other issues that the Court may need

21   to hear subsequently under the verified petition.

22           THE COURT:  Now, Mr. Dubosar, the BVI

23   matter, this is the one that's pending in the Federal

24   District Court here in West Palm Beach; is that right?

25           MR. DUBOSAR:  Correct.

1            THE COURT:  What is the status of that case,

2     what's happening there?

3            MR. DUBOSAR:  The status of that is,

4     initially Holland and Knight was in there representing

5     the defendant.  Their motion to withdraw was granted,

6     and there were pending motions to compel discovery and

7     for other relief, and Judge Marra had those under

8     consideration.

9            Then Ms. Blanco, on behalf of British

10    American, which is not the petitioner in this case,

11    not according to the Federal case, filed some sort

12    of a motion without being granted intervention, to

13    extend the time of the defendant in that case to

14    comply with deadlines that have already come and

15    gone.

16            We're a secured creditor in that case.  Our

17    collateral that we're foreclosing on are all of the

18    membership interests in an entity that owns

19    undeveloped real estate in central Florida that's

20    subject to a mortgage to another party that's now in

21    default.

22            It's important for my client to continue to

23    be able to move towards judgment in that case.  And I

24    would say, based on the procedural posture in which

25    this is brought to you, there's nothing before the

1    Court that would justify extending the stay to the

2    Federal Court case, because as I think Ms. Blanco even

3    acknowledged, they haven't even taken the steps they

4    would need to gain control over the British American

5    Isle of Venice entity, to even file a 15 for that

6    company.  So under the circumstances, I think it's way

7    premature.

8            One other thing I would like to point out

9    is, not only do you not have proof of the affiliation,

10   although Ms. Blanco appeared in the State Court case

11   on behalf of the petitioner, British American

12   Insurance Company, she declined to do the same thing

13   in the Federal case.

14           And if, in fact, she's claiming that the

15   parent has authority to control the affairs of the

16   affiliate, she could have, should have appeared

17   in that case as well.

18           I would point out as a technical way, by the

19   way, Your Honor, you really have no proof in front of

20   you today.  While the petition is supposed to be

21   verified, you have significant conflicts on the

22   verification.  One paragraph says, and this is

23   paragraph 2 that I'm reading from, I have read the

24   foregoing petition and I am informed and believe that

25   the factual allegations contained in the petition are

1   true and correct.  That's basically an information and

2   belief type allegation, which is not evidence.

3            Then in the next sentence it says, I verify

4   under penalty of perjury, under the laws of the United

5   States of America, that the factual allegations

6   contained in the petition are true and correct.

7            So right here in the verification we have a

8   contradiction as to whether Mr. Lopez is operating on

9   information and belief, or whether he has personal

10  knowledge.

11           THE COURT:  Let's leave that behind for a

12  moment.  Mr. Lopez is here in the courtroom.  Let me

13  back up.

14           What I'm suggesting is essentially a

15  maintenance of the status quo between now and a

16  continued emergency hearing.  Is there anything

17  happening in the next week that would lead you --

18  without making any specific findings, Mr. Dubosar, or

19  precluding you from making any of these arguments in

20  connection with a continued hearing, is there any

21  reason why you wouldn't consent to a continuance with

22  some interim relief, in which I am reserving all of

23  your rights, to next week?

24           MR. DUBOSAR:  With respect to the State

25  Court litigation, because you've given the protection

1   on the fund, we would certainly have no objection,

2   because that protects the interest of everybody.

3          With respect to the Federal litigation where

4   Judge Marra has matters under consideration, we have

5   been so delayed in that case, they haven't given us

6   discovery that Holland and Knight presumably has in

7   their offices in Miami, some of which may be helpful

8   to me in preparing for the evidentiary hearing on this

9   petition.

10          THE COURT:  Which, by the way, let me just

11   make that clear, I intend to have at least 20 days

12   notice of the recognition itself.  So what we would be

13   talking about is a continued hearing on the interim

14   relief under Section 1519.

15          MR. DUBOSAR:  Given the fact that there's

16   absolutely no evidence that would support a stay, a

17   so-called affiliate, you don't even have evidence of

18   affiliation in front of you, and given the fact that

19   we're prejudiced by every day of delay that we have in

20   the Federal Court case because we're going after

21   collateral that could become subject to the

22   foreclosure proceedings of another creditor, the one

23   who holds the mortgage on the real estate, my clients

24   to do object to any staying of the Federal case before

25   Judge Marra on British American Isle of Venice.

1          We consent to the relief that Your Honor has

2     fashioned, in equitable fashion I should say, for

3     purposes of the Osceola State Court case, and any

4     attempt of any of the parties to grab the assets that

5     belong to British American.

6          THE COURT:  Understood.

7          MS. BLANCO:  Your Honor, the issues in the

8     pending District Court case with regards to BVI's

9     subsidiary as we're calling it, are important because

10    the defenses, which the Court after Green Island

11    Holdings, Mr. Dubosar's client's motion to strike,

12    refuse to strike those defenses and ask for

13    clarification, are defenses in the nature of fraud

14    that the transactions at issue in the case rise to the

15    level of fraud.

16         Mr. Lopez, as a judicial manager, is a

17    fiduciary, has the obligation in an order to properly

18    defend those claims to investigate them.  He is not

19    the BVI subsidiary or its directors who are involved

20    in the transaction, and as a result, we've asked

21    in that proceeding to have more time to address those

22    issues and allow him, as a judicial manager, to do

23    what's necessary to properly respond.  But we've done

24    that in his capacity as judicial manager for the

25    parent.

1          With that said, Your Honor, I did not appear

2     on behalf of the subsidiary at that time, and have not

3     since, due to the filing of this proceeding and the

4     request for the stay here, but Mr. Lopez has received

5     authority from the Bahamian Court to place the BVI

6     subsidiary under provisional liquidation under

7     applicable British Virgin Island law.

8          And so he is taking those steps.  That

9     hearing occurred Friday.  As a result, Mr. Dubosar

10    references my inability, so to speak, to appear on

11    behalf of the British Virgin Island subsidiary, and

12    obviously this is a moving process with many, many

13    tentacles, one of which is the British Virgin Island

14    piece.

15         And so to have Mr. Lopez on behalf of his

16    parent have to deal with a pending litigation which is

17    at the answer stage, and at the stage where the

18    defendant, the BVI subsidiary is asked to amend

19    affirmative defenses, does not prejudice the case in

20    that early stage for a short stay, for an interim

21    temporary stay for a week.  I mean, that's just not

22    the type of irreparable harm that would prevent this

23    Court from granting the type of relief temporarily

24    that is being sought on behalf of the British Virgin

25    Island subsidiary.

```
 1            Mr. Lopez is here.  His verified statement
 2   is on the record that upon his information and belief
 3   it is a wholly owned subsidiary, and at the moment he
 4   is directing me to act on his behalf to preserve the
 5   status quo, which is what we've done in the District
 6   Court case to date, and what we're trying to do here
 7   at the moment.
 8            And he is proceeding within the scope of his
 9   authority as judicial manager for the parent to
10   protect the assets of the parent and its investments
11   through its subsidiary.  To have a stay, even
12   temporarily apply to only the parent and not extend it
13   to the BVI subsidiary, would greatly prejudice the
14   debtor.
15            And let me -- I'm not certain that Mr.
16   Dubosar's explanation of what the transaction, the
17   nature of the litigation arises out of, does this
18   justice, Your Honor.  And I apologize that Mr. Dubosar
19   is on the telephone and cannot view these, but I
20   wanted to give the Court an idea of what the
21   organizational chart looks like for these companies,
22   and where the British Virgin Island subsidiary fits
23   in.
24            Because I think it's important for the Court
25   to understand the relationship between the parent and
```

1    the BVI subsidiary, as well as the entire picture of

2    what the British American organization looks like.

3              And if the Court would permit me, I would

4    like to provide an organizational chart for

5    instructive purposes, not submitting it for purposes

6    of evidentiary value.  I understand Mr. Dubosar

7    obviously cannot view it, but just for purposes of

8    discussion so that I can guide you in respect to how

9    the British Virgin Island subsidiary fits into the

10   organization.

11             THE COURT:  Before we get there, let me

12   rewind just a little bit.

13             You said that the failure to extend the stay

14   to BVI for this next week would result in harm to the

15   debtor's estate.  How is that, can you explain that?

16             MS. BLANCO:  Well, Your Honor, at the moment

17   the British Virgin Island subsidiary is acting -- it

18   does not have its own capacity to act on its behalf.

19   British Virgin Islands acts through the judicial

20   manager at the moment to the extent he has authority

21   to seek, under applicable law where it is organized, a

22   process to have recognized its provisional liquidation

23   so to speak, and is acting to prevent -- or to keep

24   the status quo and prevent any further harm through a

25   default or otherwise through his failure to act in the

1    District Court matter.

2            And as a result is forced to expend its

3    resources through its counsel and actually speaking on

4    behalf of the subsidiary at the moment, and as a

5    result, it's causing the parent harm not to maintain

6    the status quo because it's having to deal with the

7    issues of the subsidiary here in the U.S.

8            THE COURT:  But what will change in that

9    regard if I were to grant interim relief between now

10   and a continued hearing on the emergency portion of

11   the relief, I'll call it, the 1519 provisions?

12           MS. BLANCO:  Well, Your Honor, in between

13   now and then, there have been responses to the motion

14   filed by the judicial manager in that case asking the

15   Court for additional time.  The Court has not ruled,

16   but without a stay the judicial manager may have to

17   respond to the papers filed by the plaintiff, which

18   are going to cause, between now and the day that this

19   Court sets a continued hearing, additional fees and

20   expenses, additional time devoted by a judicial

21   manager in respect to those claims.

22           And frankly, Your Honor, the issue is, what

23   irreparable harm is there to the debtor.  And the

24   irreparable harm is that the attention is being

25   diverted from the subject of this case, which is to

1   try to seek an ultimate recognition by this Court over

2   these proceedings, and potentially a permanent stay

3   for this BVI subsidiary, in addition to all of the

4   pending matters pending in all of the different areas

5   of the Caribbean, as well as then having to have

6   attention paid to an expense associated with this

7   District Court matter, which is in its infancy.

8          So essentially, Your Honor, there's an issue

9   here with regards to how it is that Mr. Lopez, as

10  judicial manager, can provide the necessary responses

11  that are due under that State Court litigation with

12  the limited information that he currently has, and is

13  gathering, as well as at the same time preparing for

14  an evidentiary hearing for recognition before this

15  Court, and in connection with all the other pending

16  issues that exist throughout the Caribbean, which I'm

17  happy to present to the Court so that the Court

18  understands how this all fits in.

19          THE COURT:  Now, Mr. Dubosar, in connection

20  with any requests similar to this for effectively an

21  extension of a stay under the Code, the analysis

22  always involves a weighing of the benefits and harms

23  inherent in the requested relief.  What hard is going

24  to come, if you could be specific, what harm is going

25  to come to your client if we should have an interim

1    stay of the District Court action in the next week?

2              I know you said every day, but we're very

3    early in the case apparently.

4              MR. DUBOSAR:  Well, really not.  We have a

5    case management order.  We have a trial date.  The

6    pleadings are --

7              THE COURT:  And when is the trial date?

8              MR. DUBOSAR:  I knew you were going to ask

9    me a question I would need the file for, and I

10   apologize, but I had another hearing scheduled --

11             THE COURT:  I understand.  I understand.

12             MR. DUBOSAR:  I just don't have everything

13   at my fingertips.

14             THE COURT:  Is it eminent?

15             MR. DUBOSAR:  It is -- I think the discovery

16   deadlines have come and gone.

17             I believe that it was set for the end of

18   this year, but I really don't recall off the top of my

19   head, and what we're trying to do is make sure that

20   that case isn't unduly delayed so that if ultimately

21   you determine that you're not going to extend the stay

22   to the so-called affiliate, we haven't been put

23   further behind the eight ball on prosecuting that

24   case.

25             It's also important for Judge Marra to rule

1    on some of the pending motions so that we don't lose

2    any further time.  And the only part that I'm hearing

3    from the other side is they might have to file some

4    pleadings or motions for extension of time.  That

5    doesn't rise to the level of irreparable harm that

6    requires the implementation of a stay on injunction

7    standard.  They can file a motion with Judge Marra.

8              MS. BLANCO:  Judge, I'm referencing docket

9    22, which is docketed in the Southern District Court

10   case, pending in front of Judge Marra, and the trial

11   date has been set for January 2010, and a pretrial

12   conference for mid December of 2009.

13             MR. DUBOSAR:  I was off by a month.

14             THE COURT:  Anything else you want to

15   address today?

16             I understand you're asking for 1519 relief

17   today, and based on what you put in the pleadings it

18   appears that the relief is essentially a duplication

19   of what would otherwise be acceptable under Section

20   362, the administration provision, which we would have

21   to revise in order to deal with the specific account

22   that we were addressing with Mr. Dubosar so that it

23   didn't result in administration of the asset, which

24   would bring it outside of the country, it would be

25   essentially frozen.

1         And what other relief under 1519 are you

2    asking for?  We're going to leave out BVI for just a

3    moment.

4         MS. BLANCO:  Your Honor, that's essentially

5    the scope of the request.  It's for essentially a stay

6    for all of the debtor's, or the proposed debtor's

7    assets.  That's essentially the scope, with the

8    modification.

9         Your Honor, with regard to the modification,

10   the one inquiry I would have is, that the modification

11   would, of course, stay any action by the investment

12   fund manager; correct?

13        THE COURT:  Yes.  Because we're talking

14   about a stay of any action against an asset that would

15   be treated as if it were the asset of a bankruptcy

16   estate under 541, pursuant to the terms of 1519.  So

17   the answer is yes.

18        MS. BLANCO:  I think the judicial manager

19   would consent to that freely.

20        THE COURT:  All right.  I think the sticky

21   point here is, whether or not we extend relief

22   specifically to the BVI entity, which you've addressed

23   in your motion -- your emergency motion at docket

24   entry 4.

25        My concern there is that, and I can ask you

1    whether there is evidence you could present today on

2    these issues, my concern there is that the way 1519 is

3    worded, it says that the standards applicable for an

4    injunction apply.

5            This isn't necessarily a 1519 injunction,

6    however, because when you look at 1519 it all has to

7    do with the debtor's assets and actions against the

8    debtor.  This is more akin to the kind of injunction

9    which might be entered say, to prohibit continuation

10   of litigation against the principal of a Chapter 11

11   debtor, which we, unfortunately, call an extension of

12   the automatic stay, but it really isn't, it's

13   something else entirely.

14           And my concern there is that in those

15   instances, and I think it should be the same here, the

16   moving party needs to show that there would be

17   irreparable harm to it, and not -- there is a weigh-in

18   process involved, as I said.

19           But the burden rests with the moving party.

20   And unless there's something that you can point to in

21   the form of evidence that could be briefly presented

22   today, because this is admittedly noticed as a

23   non-evidentiary hearing, it puts me in a difficult

24   position where I don't think I can make the necessary

25   findings to grant that relief with regard to BVI.  We

1    could certainly set a very quick hearing on that

2    request, but I don't think I'll be able to grant it

3    today, unless there's something you can point me to

4    that I'm not yet aware of.

5          MS. BLANCO:  Well, Your Honor, this is not

6    scheduled for an evidentiary hearing, but Mr. Lopez is

7    here, and would testify that if a stay is not granted,

8    he would expend, on behalf of the BVI entity,

9    resources of the parent in order to maintain the

10   status quo in the pending BVI litigation pending the

11   provisional liquidation order entered by the foreign

12   applicable law under the foreign applicable law, and

13   subject of the Bahamian order that was ruled upon but

14   has not yet been entered because it was a holiday in

15   the Bahamas yesterday.

16         THE COURT:  Which may actually end up up in

17   a separate Chapter 15 petition with regard to that

18   entity?

19         MS. BLANCO:  Potentially, Your Honor.

20         THE COURT:  I understand.

21         MS. BLANCO:  I'm not clear on that, and

22   neither is the judicial manager at this point in time,

23   but that's potentially a possibility.

24         In any event, Your Honor, he's prepared to

25   testify that in the intervening period the entity

1    acting on behalf of the BVI entity at the moment is

2    the parent, the proposed debtor, and that it would

3    cause an extension of its resources and his time as

4    judicial manager to manage and keep the status quo,

5    pending further issuance of a stay in this court, or

6    otherwise.

7           And so as a result, I would proffer his

8    testimony.  He's here.  He will testify on behalf

9    of -- his own behalf, or on behalf of the British

10   American entity that would be the irreparable harm

11   caused if no stay would be entered today.

12          THE COURT:  All right.  I think that -- and

13   part of that is an argument addressing the extension

14   of the stay on a regular basis, which would be

15   addressed at a later hearing.  But the issue for me is

16   whether the hard, irreparable harm, is such that it is

17   of a material nature and cannot be undone.

18          And even if I were to accept that proffer,

19   it does not sound to me like we have a situation

20   similar to, for example, the investment account in

21   Orlando.  It isn't something that may be lost and

22   never regained for the estate, which is clearly

23   material to the overall value in the estate, I don't

24   know if it's a billion dollars of liabilities, but

25   nonetheless.

1          It seems to me here potentially a week of

2     responding to litigation requests does not arise to

3     irreparable harm.  So if even if I were to accept the

4     proffer, I don't think that supports entry of interim

5     relief as requested with regard to BVI, and I'm not

6     willing to grant that portion of the relief.

7          I will grant all the other interim relief

8     covered under 1519 which you have requested in the

9     emergency motion.  And it needs to be tailored

10    slightly in order to deal with the issue, you can

11    address it, Mr. Dubosar.

12         MS. BLANCO:  Your Honor, the one thing I

13    would ask the Court to consider is that be a ruling

14    without prejudice in the event that somehow between

15    now and the time the Court resets this hearing, there

16    is a default judgment or any other issuance of any

17    kind of order with finality that would otherwise have

18    a harmful effect upon the subsidiaries.

19         MR. DUBOSAR:  Your Honor, just to clarify

20    for the record.  I believe you said that all of this

21    is done without any findings of fact and without

22    prejudice, and is not binding under any future

23    matters.

24         THE COURT:  That's correct.  And let me make

25    it clear that I'm not making any specific ruling that

1    there isn't necessarily cause to enter a final order

2    in connection with relief against BVI.  My concern is

3    that, based on what I've heard today, which I think is

4    probably the only argument that could be made by the

5    petitioner at this moment given what I've heard about

6    the state of the District Court litigation that BVI is

7    involved in, that I haven't heard anything that

8    reaches the level of the extraordinary type of harm

9    which would need to result in order for me to feel

10   warranted in granting the interim relief against a

11   non-debtor, what is currently, unfortunately a

12   non-debtor entity.  And I understand where the

13   petitioner is on connection with potential action

14   bringing that entity into a liquidation into the

15   Bahamas, et cetera.

16           Is there anything else -- oh, I'd like to

17   schedule a hearing on the interim portion of relief,

18   so we can have a continued evidentiary hearing with

19   regard to those matters.  And I also want to schedule

20   a hearing on the recognition.

21           And let's address notice for a minute,

22   because it seems to me there's two kinds of notice

23   that we need to address.  One is the type of notice

24   that is addressed in your document 5, which is a

25   motion under 1514, and the other is the notice

1    required under 2002(q)(1), which is notice of the

2    upcoming hearing itself.

3              In terms of notice of the upcoming hearing,

4    if you can carve it out from the 1514 notice to

5    creditors in general, what notice does the -- and I

6    would require the petitioner to provide the notice --

7    what notice does the petitioner propose to provide

8    with regard to the hearing?

9              MS. BLANCO:  Well, Your Honor, the

10   petitioner proposes that any creditor for which it has

11   a direct mailing address in terms of any U.S. creditor

12   who has a potential or pending claim, and for which

13   petitioner has an address, proposes to give notice to

14   those creditors via mail as we would ordinarily.

15             Mr. Dubosar, for example, who I knew of, I

16   tried to get mailed right away upon filing.  And there

17   are others like that.  But otherwise, we are resigned

18   to having to use first class U.S. mail for notice to

19   the American creditors.

20             For purposes of giving notice of a hearing

21   before this Court for foreign creditors, there are

22   pending proceedings, as the Court is aware, in various

23   jurisdictions throughout the Caribbean, and each of

24   those jurisdictions has a judicial proceeding pending

25   where it filed any creditors who have been involved or

1    have a need for notice in those particular

2    jurisdictions have access to those proceedings and

3    would get notice.  It's filed there.

4            So potentially one way to give notice of the

5    hearing, as well as the potential hearing on the

6    verified petition, and in the ultimate recognition

7    hearing, as I would call it, is to file any papers or

8    notices of hearing in those pending cases.

9            In respect to notice under 1514, as the

10   Court is aware, we have also asked that the Court

11   relieve us of the obligation to give notice of

12   commencement per se with the claims bar date, because

13   claims bar dates just are not scheduled at the present

14   time.

15           The company is not in liquidation presently,

16   it's under what we call judicial management generally

17   speaking, and the nomenclature and the processes in

18   each of the jurisdictions is different, and so it may

19   cause more harm than good to do that.

20           But we would propose that we allow the

21   judicial manager to give public notice in the

22   circulation in the newspaper with circulation in each

23   of the pending jurisdictions of the existence of this

24   proceeding.

25           If the Court wishes, the hearing of the

1    final -- the final hearing, if the Court is going to

2    set that today, we can include that as well.

3              THE COURT:  I will set that.  But let me

4    point out to you that I'm not sure that 2002(q)(1)

5    does not require notice to all creditors of the debtor

6    of the hearing.  It does allow me some leeway in

7    determining who gets the notice, but it is fairly

8    limited notice.

9              It's the debtor, all entities against whom

10   provisional relief is being sought, and you'll need to

11   give independent notice of the hearing on continued --

12   on provisional relief under 1519, all parties in

13   litigation pending in the U.S. in which the debtor is

14   a party, and there's a limited list of those which

15   you've provided to the Court already, and such

16   entities as the Court may direct.

17             And I think we can deal independently with

18   notice to creditors through a process that you've

19   outlined, perhaps with some changes under 1514.  But

20   in terms of notice of the hearing itself, I think

21   there's a very specific list provided in Rule

22   2002(q)(1), and that's how I would expect it to be

23   handled.

24             MS. BLANCO:  Thank you, Your Honor.

25             And there may be a couple of additional

1    parties that we may supplement.  We learn on a

2    day-to-day basis of pending matters.  This is an

3    insurance company, as the Court may intimate or assume

4    that there are all kinds of claims and litigation that

5    may exist that the judicial manager learns about on a

6    day-to-day.

7            And I think there may be one or two that we

8    have to add to the list that it may be pending in the

9    U.S. where the proposed debtor is either a plaintiff

10   or a defendant.  To the extent that there are such

11   pending matters, we would give them notice as we would

12   ordinarily in a Chapter proceeding under this Court

13   and in this law.

14           THE COURT:  All right.  In terms of a

15   continued hearing on what I'll call again, the

16   emergency portion of the relief, which is the 1519

17   portion, which would be at that point consideration

18   anew of the relief granted on an interim basis as a

19   result of today's hearing, I do have space next

20   Wednesday afternoon.  Is there a reason why that

21   doesn't work and we should push it out slightly, and I

22   do mean slightly?

23           MS. BLANCO:  Your Honor, I am at the

24   National Conference of Bankruptcy Judges.

25           THE COURT:  I'm one of the few judges not

1   going in this district.  The conference is through

2   Friday, is that right?

3            MS. BLANCO:  I'm actually returning that

4   day, but landing just in time for my bankruptcy clinic

5   class at FIU.

6            THE COURT:  When is the conference over next

7   week?

8            MS. BLANCO:  It's actually over on

9   Thursday.

10           THE COURT:  The 22nd?

11           MS. BLANCO:  Yes.

12           THE COURT:  It's possible to put it on the

13   afternoon of the 23rd, which is Friday.  I believe I

14   have an evidentiary hearing in the morning, although

15   we have been unable to figure out how it got scheduled

16   there or whether there's any order saying that it's

17   scheduled there.  But nonetheless, it looks like

18   there's an evidentiary hearing on Friday morning.  And

19   that gives us, as you can imagine, a very short period

20   of time to hear it.

21           MR. DUBOSAR:  Also I would want to have an

22   opportunity to take Mr. Lopez' deposition in advance

23   of that hearing to the extent it's going to be

24   evidentiary.

25           THE COURT:  Perhaps it would be wiser -- if

Ouellette & Mauldin Court Reporters  (305)358-8875

1    Ms. Klopp is available, maybe you could come into the

2    courtroom.  I also do judicial settlement conferences

3    and they tend to block things off on the calendar, and

4    I have one that's filling an entire day and I don't

5    know whether it's happening or not.

6              I have a full day on the 30th.  At least

7    I think I have a full day on the 30th.  That might

8    give you a bit more time.  And while you were

9    conferring with Mr. Lopez, Mr. Dubosar was saying that

10   he would like to depose Mr. Lopez.  So keep that in

11   mind as we are setting this date.

12             MS. BLANCO:  Judge, I'm actually out of town

13   with my family on the 30th.

14             THE COURT:  We're getting shorter and

15   shorter.

16             MS. BLANCO:  Actually from the 29th to the

17   1st.  I return that Monday.

18             MR. DUBOSAR:  How do you look on Monday the

19   2nd, Your Honor?

20             THE COURT:  There's a trial.  No, there's a

21   mediation.  I'm just looking through the days going

22   into the future here, but we've had a big increase in

23   adversaries as well.

24             MR. DUBOSAR:  I was happy to see you enter

25   summary judgment in one of those.

Ouellette & Mauldin Court Reporters  (305)358-8875

1            THE COURT:  Was it in your favor?

2            MR. DUBOSAR:  Of course.  Would I be happy

3    if it wasn't?  It was in the Budner Weiner matter.

4            THE COURT:  This is pretty bad.  If we need

5    a day on this, the first date that I came to was the

6    25th of November, and by that point, we would be able

7    to have the final hearing as well.

8            And then the problem with that is, if

9    anybody comes forward, and one way to deal with this

10   is set an objection deadline with regard to the

11   interim relief and include that in the order, and

12   simply have the interim relief carry all the way

13   through.  The problem with that is, you were asking me

14   for extension of the stay with regard to Mr. Dubosar's

15   client, and that obviously wouldn't happen for a very

16   long time.

17           Let me go back to something closer and see

18   whether I can squeeze something in.  And then the

19   question also is, whether you'll be able to have Mr.

20   Lopez deposed in the meantime.

21           MR. DUBOSAR:  If Leyza would put me up at

22   Landis, I'll be happy to take the depo up there.

23           MS. BLANCO:  Mr. Lopez is actually in

24   Freeport.

25           THE COURT:  Did I start with the 21st of

Ouellette & Mauldin Court Reporters  (305)358-8875

1    October?

2            MR. DUBOSAR:  You did.

3            THE COURT:  That was next Wednesday.  And

4    that's when you're going to be away.  And then we went

5    to the 23rd, and there was a problem with that.  I

6    only have the afternoon on the 23rd.

7            So my suggestion is that we take the

8    afternoon on the 23rd, I'll start at 1.  It's

9    unfortunate, because it's possible that I won't have a

10   morning hearing that day, but I have no way of knowing

11   that right now.  And it's the only half day that I

12   have for awhile.  Do you have any other suggestions,

13   Ms. Blanco?  This is only for the continued interim

14   relief.  We haven't gotten to the petition yet.

15           MS. BLANCO:  None, Your Honor.  I mean, we

16   can try off line to figure out if there's some other

17   way to address it if a half day is not sufficient.

18           THE COURT:  There's another half day on the

19   27th.

20           MR. DUBOSAR:  I'm going to be out of town,

21   Your Honor.  I'm on a leadership cabinet for J&F, and

22   that's the annual conference in Philadelphia.

23           THE COURT:  We had a problem with the 30th.

24           MS. BLANCO:  They're all Fridays.

25           THE COURT:  Because that's the only thing

1    that's left open.  Usually I'm trying to write stuff.

2            Ms. Klopp, if you could come back in.

3            MS. BLANCO:  We have the Global Care hearing

4    scheduled on the 4th --

5            THE COURT:  That's exactly what I was going

6    to ask about.

7            MS. BLANCO:  -- and I thought that there

8    might be -- I'm not certain if that's the continued --

9    a continued date or if that's the original date the

10   Court set.

11           THE COURT:  I have Global Care on both the

12   3rd and the 4th all day.

13           MR. DUBOSAR:  Was Friday, November 6th

14   something that you were looking at?

15           THE COURT:  Friday, November 6th, I have

16   something first thing in the morning.  I don't expect

17   it to last that long, so it's possible to take that

18   remainder of the day and perhaps begin at 11.

19           MS. BLANCO:  That works for us.

20           THE COURT:  Mr. Dubosar.

21           MR. DUBOSAR:  On the 6th, yes, that will be

22   fine.

23           THE COURT:  All right.  Let's put this -- is

24   there a problem?

25           MS. BLANCO:  The one caveat is, Mr. Lopez

1   was not permitted to bring his blackberry in, so he

2   does not have access.

3           THE COURT:  Is it someplace close by?

4           MS. BLANCO:  It's in my car.

5           THE COURT:  Would you like to take a little

6   break and check?

7           MS. BLANCO:  That probably is a good idea,

8   only because he does have to travel from the Bahamas

9   for the evidentiary hearing, and it wouldn't make

10  sense for us to agree on a date and not have a date

11  which he's available.

12         THE COURT:  That would be useful.  And you

13  should probably attempt to schedule a deposition date

14  while you're all involved.  I don't need to mediate

15  that generally, but given the fact that this is on

16  relatively quick notice.

17         Let's take a quick recess and I'll come

18  back.  You might stay on the line, Mr. Dubosar.

19         MR. DUBOSAR:  I'll do that.

20         MS. BLANCO:  Thank you, Judge.

21            (A recess was taken.)

22         THE COURT:  Whenever you're ready.  Mr.

23  Dubosar is still on the line.

24         MS. BLANCO:  Judge, the 6th, which was --

25  the last proposed date works for Mr. Lopez.  I'm not

1    certain, also we need to discuss the deposition and

2    the timing of that, which would be ideal if it were

3    around the same date so Mr. Lopez could make one trip,

4    but I could talk to Mr. Dubosar and find out about

5    that.

6             THE COURT:  Okay.  That would be fine.  But

7    you should be able to make him available before the

8    6th.

9             MS. BLANCO:  Yes.

10            MR. DUBOSAR:  Your Honor, just so you don't,

11   as you said, have to mediate deposition scheduling

12   later, I would want him well enough in advance of the

13   hearing to be adequately prepared based on what he

14   testifies to.  So the day of or the day before would

15   not be acceptable.

16            And since Mr. Lopez is there with his

17   blackberry, I was going to propose either Wednesday,

18   October 28th, or Monday, November 2nd for his

19   deposition, which would give us enough time in advance

20   of the hearing.

21            THE COURT:  He's having a look.

22            MR. DUBOSAR:  While he's looking, Your

23   Honor, just as another housekeeping matter, obviously

24   we would serve the notice of deposition duces tecum, I

25   would like to obviate the need to file a motion to

Case 09-31881-EPK    Doc 36    Filed 12/01/09    Page 41 of 52

41

1    shorten the time for discovery, if Ms. Blanco will

2    agree with that.

3            THE COURT:  Let's wait until they've

4    finished conferring about the dates.

5            MR. DUBOSAR:  I'm sorry, I didn't know --

6            THE COURT:  They're still talking.

7            MS. BLANCO:  Judge, just trying to figure

8    out, Mr. Lopez is out on the 3rd.  He's not sure if

9    his return flight, he's out on vacation -- or the

10   children in the Bahamas are out on vacation from

11   school that week, and he returns, he believes that

12   Sunday.  It would be safer just to plan for Tuesday

13   the 3rd, only because we're not sure of what his

14   flight schedule would be and how he would get here on

15   Monday.

16           THE COURT:  Mr. Dubosar.

17           MR. DUBOSAR:  Tuesday the 3rd, there's

18   nothing I can't cancel, other than an 8:45 hearing in

19   West Palm, so we can probably set it for 10:30 in my

20   office in Boca.

21           THE COURT:  Is that okay with Mr. Lopez?

22           MS. BLANCO:  We probably should plan on

23   later in the morning, because he does arrive on a

24   morning flight that lands about 9:00 in the morning in

25   Miami.  So in order to adequately get to Boca, it

Ouellette & Mauldin Court Reporters  (305)358-8875

41

1    shorten the time for discovery, if Ms. Blanco will

2    agree with that.

3            THE COURT:  Let's wait until they've

4    finished conferring about the dates.

5            MR. DUBOSAR:  I'm sorry, I didn't know --

6            THE COURT:  They're still talking.

7            MS. BLANCO:  Judge, just trying to figure

8    out, Mr. Lopez is out on the 3rd.  He's not sure if

9    his return flight, he's out on vacation -- or the

10   children in the Bahamas are out on vacation from

11   school that week, and he returns, he believes that

12   Sunday.  It would be safer just to plan for Tuesday

13   the 3rd, only because we're not sure of what his

14   flight schedule would be and how he would get here on

15   Monday.

16           THE COURT:  Mr. Dubosar.

17           MR. DUBOSAR:  Tuesday the 3rd, there's

18   nothing I can't cancel, other than an 8:45 hearing in

19   West Palm, so we can probably set it for 10:30 in my

20   office in Boca.

21           THE COURT:  Is that okay with Mr. Lopez?

22           MS. BLANCO:  We probably should plan on

23   later in the morning, because he does arrive on a

24   morning flight that lands about 9:00 in the morning in

25   Miami.  So in order to adequately get to Boca, it

1    would probably be best to plan for about 11 or

2    11:30.

3              MR. DUBOSAR:  Sure.  We won't have argument

4    over time, that's not a problem.

5              THE COURT:  They're conferring, just so you

6    know, Mr. Dubosar.

7              MS. BLANCO:  And Mr. Lopez will check to see

8    if he can make the 2nd when he verifies his flight

9    arrangements, and if he can, he'll try to accommodate

10   Mr. Dubosar's schedule on the 2nd, he will do that.

11             THE COURT:  All right.  So how about if you

12   let Mr. Dubosar know that in the next two days,

13   otherwise it's on the 3rd at 11:00, approximately.

14             MS. BLANCO:  And I didn't hear the request.

15             THE COURT:  The request was whether there

16   would be a consent to shortening of the time period

17   for notice of the deposition.  We've just discussed

18   the deposition on the record, so if you could just

19   confirm.

20             MS. BLANCO:  Yes, Your Honor.

21             MR. DUBOSAR:  And to the extent that there's

22   a duces tecum of their documents in his possession,

23   custody or control, we don't want to have to file a

24   separate motion to shorten the time for production.

25             MS. BLANCO:  Yeah, that's fine, Your

Ouellette & Mauldin Court Reporters  (305)358-8875

1    Honor.

2              THE COURT:  Can you serve that by the end of

3    this week, Mr. Dubosar?

4              MR. DUBOSAR:  Absolutely.  I thought you

5    were going to ask me by the end of the day.

6              THE COURT:  This is Bankruptcy Court, we

7    work on an hour by hour basis.

8              MS. BLANCO:  Judge, and I'm not certain to

9    what degree it might be necessary, but if it is, and

10   the proposed debtor and Mr. Lopez need a deposition

11   of the creditor, the objecting creditor, we would want

12   to reserve that right to schedule that as well, but I

13   can work that out with Mr. Dubosar.

14             THE COURT:  Sure.  And if you wish to, you

15   can propose a deadline to serve such a notice so we

16   can get it done before the proposed hearing.  If not,

17   you can deal with that consensually with Mr. Dubosar,

18   I don't need to get involved if you prefer that I

19   don't.

20             MR. DUBOSAR:  Probably a little bit easier

21   when we're dealing with a domestic witness there.

22             MS. BLANCO:  Yes.  And I'm sure we can

23   resolve it then.

24             THE COURT:  So you're going to -- it's tough

25   to deal with discovery disputes even before they're

1    disputes, which is a good thing.

2           So I'm going to expect a proposed order from

3    you in electronic format dealing with the relief

4    that's been granted today.

5           MS. BLANCO:  Your Honor, just to confirm the

6    scope of that, I want to be sure that I'm clear, this

7    would be a proposed order granting an interim stay,

8    which would also, under 1519 in the scope requested,

9    and also with the modification that we discussed in

10   respect to the funds and that those funds be frozen,

11   and that essentially no one, including the fund

12   manager, is to have dominion or control over those

13   funds outside of their present form, so that it

14   affects both not just Mr. Dubosar's client and mine,

15   but also anyone else that might have control or claim

16   control of the funds.

17          THE COURT:  That's correct.  Because the

18   stay extends to any property of the debtor within the

19   jurisdiction of the United States.

20          MS. BLANCO:  Okay.  So just to be clear, and

21   that's on behalf of Baico, the debtor -- the proposed

22   debtor in this proceeding.

23          THE COURT:  That's correct.  And if you

24   could, when you fashion that order, when I was looking

25   at the language in your proposed order, which of

1   course is dealing with other relief to be heard at a

2   much later time, we haven't set that hearing yet, if

3   you could be as careful as possible to use the

4   language actually in the Code.

5        For example, the Code uses the words, within

6   the territorial jurisdiction of the United States, try

7   to use the exact language that appears to avoid

8   confusion.

9        There are some instances in your proposed

10  order, again, which we won't use for several weeks now

11  anyway, which don't exactly mirror the relevant

12  provisions in the Code, and I think you're better off

13  sticking with the exact wording.

14       MS. BLANCO:  Okay, Your Honor.  And then the

15  other question I would have is, this proposed hearing

16  date on the 6th would also deal with the request that

17  has been made on behalf of the BVI entity, although

18  the Court is not granting an interim stay of that.

19       THE COURT:  Yes.  My intention is to cover

20  the 1519 relief, which is granted on an interim basis,

21  and what I'll call the extension of the stay to the

22  BVI entity on an evidentiary basis on that same day.

23       MS. BLANCO:  So essentially it's a renotice

24  of the hearing on the motion that's being heard

25  today.

1          THE COURT:  That's correct.  Which is docket

2     entry 4, I believe.

3          MS. BLANCO:  And the order that would be

4     proposed from today's hearing would be just an order

5     partially granting the relief requested.

6          THE COURT:  That's correct.  And it is in

7     effect, partially granting the motion for continuance

8     filed by Mr. Dubosar.

9          MR. DUBOSAR:  If you wouldn't mind just

10    running that by me, counsel, I'll turn around my

11    comments quickly.

12         MS. BLANCO:  Of course, Your Honor.

13         And then with respect to just housekeeping

14    matters, the notice provisions of 1514 and the request

15    made to modify those notice provisions, I know that I

16    did present to the Court the potential options

17    available to Mr. Lopez in respect to foreign creditors

18    and the notice required under 1514, that obviously

19    deal with the look ahead as to the hearing date.

20         THE COURT:  Right.  As I see it, there are

21    two issues here.  First, let's set the hearing on the

22    recognition, and then I'm going to ask the petitioner

23    to provide notice under 2002(q)(1) only to the

24    designated parties in 2002(q)(1), not to all

25    creditors.

1          Assuming that the petition is granted and

2     there's recognition, at that point I think we should

3     consider the 1514 motion and what notice should be

4     provided to creditors, if any, at that time.

5          1514 is not a directive to provide notice,

6     it simply says if notice is to be provided, this is

7     what we should consider.

8          So I think we should consider the notice

9     motion, which I see as separate from the Rule 2002

10    requirement, also on the continued hearing date when

11    we have -- the one I haven't set yet on the

12    recognition.  Is there any reason why you would

13    address that, the notice to creditors now?

14         MS. BLANCO:  No, Your Honor.  If the Court

15    is satisfied that the 2002(q) notice is sufficient

16    pending final recognition, the judicial manager is

17    happy to only have to give notice once, if the Court

18    considers and has a hearing on final recognition just

19    for expediency and costs sake, that makes the most

20    sense.

21         THE COURT:  We need at least 20 days, and it

22    would be wise if I give you a few extra days in order

23    to accomplish this.  So let's see, today is the 13th,

24    the third is 21 days.  We can -- well, let's see,

25    right now -- why can't we have this also on the 6th of

1   November?

2          That results in a strange situation, because

3   you really won't be asking me for continuation of the

4   1519 relief at that point, except to the extent that

5   it in any way differs from that provided under 1520.

6   So is there any reason why we shouldn't put the

7   recognition on the 6th as well?

8          MS. BLANCO:  No, Your Honor.

9          THE COURT:  Let's do that.  Then we can

10  provide notice of the hearing in general, which means

11  that the interim relief, there really won't be a

12  second hearing on it before then.

13         MS. BLANCO:  That's right, Your Honor.  And

14  for efficiency's sake, I think if the dates allow us

15  to, we should just have it all at once, unless there's

16  an objection.

17         THE COURT:  That seems wise.

18         MR. DUBOSAR:  It would essentially be the

19  recognition hearing coupled with the analysis of

20  whether you're going to extend the stay.

21         THE COURT:  Exactly.  And to the extent that

22  the petitioner seeks any kind of relief which would

23  fall under 1521, it would also be considered on that

24  date, which can include continuation of the 1519

25  relief granted today.

Ouellette & Mauldin Court Reporters  (305)358-8875

1          MR. DUBOSAR:  Very good.

2          THE COURT:  If anybody read that transcript

3      of what I just said, I don't have any idea what it

4      means, but both of you seem to know what I'm talking

5      about.

6          All right.  Anything else?  If we throw in a

7      few acronyms that would help.

8          MS. BLANCO:  I think we've covered it, and I

9      will be in touch with Mr. Dubosar to coordinate what,

10     if any, other discovery is appropriate, since we're

11     now having the full final recognition hearing on the

12     same date there may be other issues that we need to

13     address.

14         THE COURT:  Okay.  Now, in the interim order

15     you can include the hearing date.  We'll probably do a

16     separate evidentiary hearing notice, which is going to

17     be on the petition itself, which is docket entry 2, on

18     a continued evidentiary hearing on 4, which is being

19     granted in part, and an evidentiary hearing on 5.

20         And I would like you to do a certificate of

21     service, and merely represent in the certificate of

22     service a little bit augmented from what would

23     normally be filed, that it covers the parties, to the

24     extent of your knowledge, the petitioner's knowledge,

25     the parties required to be served under 2002(q)(1).

Ouellette & Mauldin Court Reporters  (305)358-8875

50

1           MS. BLANCO:  Thank you, Your Honor.  And the

2    time for that hearing on the 6th?

3           THE COURT:  Is at 11.  There's an

4    evidentiary hearing that morning on objection to

5    exemptions, which I don't expect to last more than an

6    hour and a half.

7           MS. BLANCO:  Okay, Your Honor.

8           THE COURT:  So Mr. Lopez, you may get to see

9    a very different side of the Bankruptcy Court at that

10   point.

11          Anything else that we should address today

12   while I have you here and Mr. Dubosar on the line as

13   well?

14          MS. BLANCO:  I don't think so, Your Honor.

15          MR. DUBOSAR:  Not that I can think of, but

16   we probably will a minute after I hang up.

17          THE COURT:  That's usually the case.  Thank

18   you all.  See you in a few weeks.

19          MS. BLANCO:  Thank you.

20          MR. DUBOSAR:  Thank you.

21          (The proceedings were concluded.)

22

23

24

25

51

```
 1            .
 2                    C E R T I F I C A T E
 3
 4   The State of Florida      )
 5   County of Palm Beach      )
 6
 7            I, JACQUELYN ANN JONES, Court Reporter,
 8   certify that I was authorized to and did
 9   stenographically report the foregoing hearing; and
10   that the transcript is a true record of my
11   stenographic notes.
12            I further certify that I am not a relative,
13   employee, attorney or counsel of any of the parties,
14   nor am I a relative or employee of any of the parties'
15   attorney or counsel connected with the action, nor am
16   I financially interested in the action.
17
18            In witness whereof I have hereunto set my
19   hand and seal this  29th  day of  November, 2009.
20
21                        _____
22                        JACQUELYN JONES
23                        Commission DD 846540
24                        Expires Feb 18, 2013
25
```

Ouellette & Mauldin Court Reporters  (305)358-8875