UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

BRITISH-AMERICAN INSURANCE
COMPANY LIMITED

       Debtor in a Foreign Proceeding

_____/

CHAPTER 15

CASE NO.: 09-31881-BKC-EPK
CASE NO.: 09-35888-BKC-EPK
(Jointly Administered)

## GREEN ISLAND HOLDINGS, LLC'S MEMORANDUM IN OPPOSITION TO JUAN LOPEZ' AND BRIAN GLASGOW'S VERIFIED PETITIONS FOR RECOGNITION

Creditor, GREEN ISLAND HOLDINGS, LLC ("GREEN ISLAND"), by and through its undersigned counsel, respectfully files its Memorandum in Opposition to Juan Lopez' and Brian Glasgow's Verified Petitions for Recognition, and states:

## I.  BACKGROUND

On October 9, 2009, Debtor, BRITISH AMERICAN INSURANCE COMPANY LIMITED ("BAICO") commenced the above styled case. Specifically, JUAN M. LOPEZ, purporting to be the "duly appointed Judicial Manager for [BAI] and foreign representative," filed a Verified Petition for Recognition of Foreign Mail Proceeding or in the Alternative a Foreign Nonmain Proceeding and for Coordination under 11 U.S.C. § 1530 of More Than 1 Foreign Proceeding and Related Relief Pursuant to 11 U.S.C. § 1515 (the "Lopez Petition"). The Lopez Petition seeks an order recognizing a proceeding pending in the Commercial Division of the Supreme Court of The Commonwealth of The Bahamas (the "Bahamian Proceeding") as a foreign main proceeding or in the alternative a foreign nonmain proceeding and granting relief pursuant to Title 11 of the United States Code ("Bankruptcy Code").

Thereafter, on November 23, 2009, BRIAN GLASGOW ("GLASGOW") filed a Verified Petition for Recognition of Foreign Nonmain Proceeding Under 11 U.S.C. 1515 and 1517 and

For coordination Under 11 U.S.C. § 1530 of More than 1 Foreign Proceeding and Related Relief Pursuant to 11 U.S.C. §1515 (the "Glasgow Petition"). The Glasgow Petition seeks an order recognizing a proceeding pending in before the Eastern Caribbean Supreme Court in the High Court of Justice Saint Vincent Grenadines (the "Saint Vincent Proceeding") as a foreign nonmain proceeding. Because neither the Bahamian Proceeding nor the St. Vincent Proceeding meet the requirements of 11 U.S.C. § 101(23) and 11 U.S.C. § 1502, this Court should deny both petitions. Brian Glasgow and Juan Lopez will collectively be referred to as "Petitioners."

## II.    MEMORANDUM OF LAW

### A.    The Distinction between Chapter 15 and its Predecessor § 304

Chapter 15, under which Petitioners' seek recognition, was enacted in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. The purpose of its enactment was to replace § 304 in order to create greater legal certainty and promote the fair and efficient administration of cross-border insolvencies that protect the interest of all creditors. *In re Bear Stearns High Grade Structured Credit Strategies Master Fund, LTD,* 374 B.R. 122, 126 (Bank. S.D.N.Y. 2007) (hereinafter *In re Bear Stearns I*); *Lavie v. Ran,* 406 B.R. 277, 283 (S.D. Tex. 2009); 11 U.S.C. §1501(a). Relief to foreign representatives under § 304 was largely discretionary and based on subjective factors and comity, however, "with the advent of Chapter 15, courts have been divested of much of this discretion and are now directed by objective statutory guidelines." *Lavie,* 406 B.R. at 282. The main difference between the two, is that § 304 automatically gave courts the authority to open ancillary proceedings and grant broad forms of relief to foreign representatives, while Chapter 15 "imposes a rigid procedural structure  for recognition" prior to the granting of relief. Accordingly, "the jurisprudence developed under

section 304 is of no assistance in determining issues relating to the presumption for recognition under chapter 15." *In re Bear Stearns I,* 374 B.R. at 132; *In re Basis Yield Alpha Fund (Master),* 381 B.R. 37, 59 (Bank. S.D.N.Y. 2008) (emphasizing that unlike § 304 which emphasized flexibility and discretion, "chapter 15 is procedurally quite **rigid**.") (emphasis added).

Notwithstanding the distinction between Chapter 15 and § 304, the majority of cases cited by Petitioners in support of their *Supplemental Brief in Support of (I) John Lopez's Verified Petition for Recognition of a Foreign Main Proceeding and (II) Brian Glasgow's Verified Petition for Recognition of a Foreign Nonmain Proceeding* apply only to § 304. As this Court clearly articulated during the December 1, 2009 hearing "[t]he former section 304 and its broad discretion still exists in Chapter 15 **after recognition** . . . but now there's a gate keeper." December 1, 2009 Hearing Transcript at 38:7-11[1]; *see, also In re Bear Stearns I,* 374 B.R. at 126.

**B.**  **Requirements for Recognition**

Section 1517, of the Code specifies that in order for a proceeding to be recognized, the foreign representative must prove the that: (1) "such foreign proceeding for which recognition is sought is a foreign main or foreign nonmain proceeding within the meaning of section 1502;" (2) that the foreign representative applying for recognition is a person or body; and (3) that the petition meets the requirements of § 1515.  GREEN ISLAND does not dispute that Petitioners are persons, nor that the bare bones of their petitions meet the requirements of § 1515.  Neither proceeding, however, meets the strict application of the definitional terms of "foreign main proceeding" or "foreign nonmain" proceeding set forth in §1515 and §101(23).  *See In re Tradex*

---

[1] A true and correct copy of relevant portions of the 12/1/09 hearing transcript is attached hereto as **Exhibit "A."**

*Swiss AG,* 384 B.R. 34, 40 (Bank. S.D.Mass. 2008) ("[T]he determination of whether there is a foreign proceeding calls for **strict application** of the definitional terms set out in the Bankruptcy Code."). Therefore, both Petitions should be denied.

1.  <u>The Proceedings for which Recognition is Sought are Not "Foreign Proceedings" as defined by §101(23)</u>

      Section 1502(a) defines a "Foreign Main Proceeding" as a "**foreign proceeding** pending in a country where the debtor has the **center of its main interests**" and a "Foreign Nonmain Proceeding" as a "**foreign proceeding**, other than a foreign main proceeding, pending in a country where the debtor has an **establishment**." §1502(a)(4),(5). In order to satisfy either of these definitions, the pending proceeding must first meet §101(23)'s definition of a "foreign proceeding." *In re Gold,* 410 B.R. at 367. In conjunction with the 2005 enactment of Chapter 15, Congress significantly changed the definition of a "foreign proceeding." The previous version of §101(23) which was used in § 304 analysis contained only 3 requirements and was broadly construed. *In re MMG LLC,* 256 B.R. 544, 549 (Bank. S.D.N.Y. 2000).[2] Whereas the current version of §101(23), applicable to Chapter 15, contains 6 specific elements requiring strict application. *Lavie,* 406 B.R. at 282. *In re Bear Stearns I,* 374 B.R. at 132; *In re Basis Yield,* 381 B.R. at 59; *In re Tradex,* 384 B.R. at 40. In their Supplemental Brief, Petitioners argue that the subject proceedings satisfy §101(23). In support of this assertion, Petitioners ignore the distinctions between the two versions of §101(23) and focus exclusively on cases

---

[2] "'foreign proceeding' means proceeding, whether judicial or administrative and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization." 11 U.S.C. 101(23) **(2004).**

interpreting the broad pre-2005 version as it was applied to § 304.[3]  One can only conclude that

Petitioners' contention that §101(23) should be construed broadly is because they recognize the

serious obstacles presented by the strict application of the current version.

Section 101(23) defines a "foreign proceeding" as:

> "a **collective** judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by the foreign court, **for the purpose of reorganization or liquidation."** (emphasis added).

Thus, to satisfy the definitional standard of a "foreign proceeding," a petitioner must prove that

same is in fact:

a.  A proceeding;
b.  That is either judicial or administrative;
c.  **That is collective in nature;**
d.  That is in a foreign country;
e.  That is authorized or conducted under a law related to insolvency or adjustment of debts;
f.  In which debtor's assets and affairs are subject to control or supervision of the foreign court; and
g.  **Which proceeding is for the purpose of reorganization or liquidation.**

GREEN ISLAND does not dispute that the Bahamian and St. Vincent proceedings are

judicial proceedings pending in foreign countries under laws related to adjustment of debt under

which BAICO's assets and affairs are subject to the control or supervision of the court, except to

the extent that the Order appointing GLASGOW places only those of BAICO's assets and affairs

"**in** Saint Vincent and the Grenadines . . . in judicial management."  St. Vincent Order

Appointing Brian Glasgow as Judicial Manager at ¶1.  A true and correct copy of same is

---

[3] The only cases cited by Petitioners in the text of their Supplemental Brief are: *In re MMG,* 256 B.R. 544 (Bank. S.D.N.Y. **2000**); *In re Fracmaster, Ltd,* 237 B.R. 627 (Bank. E.D. Tex. **1999**); *In re Taylor,* 177 B.R. 903, 907 (Bank. C.D. Cal. **1995**); *In re Rose,* 318 B.R. 771 (Bank. S.D.N.Y. **2004**).

attached hereto as **Exhibit "B."** The proceedings are not, however, either "collective in nature" or "for the purpose of reorganization or liquidation" as contemplated by the Code. As such, both petitions should be denied.

### a.  *Foreign Proceedings Must be "Collective in Nature"*

The most significant difference between the pre and post-2005 versions of §101(23) is that Congress amended the definition to require that a petitioner prove that the pending proceeding is "collective in nature."   A proceeding is "collective in nature" only if it "considers the rights and obligations of **all creditors.**" *In re Betcorp Ltd.,* 400 B.R. 266, 281 (D. Nev. 2009). (emphasis added). If a proceeding was initiated for the primary purpose of protecting only a single class of creditors, it is not "collective in nature." *Id.* This element is essential to the recognition analysis based on Congress' primary objective of protecting the general interests of all creditors and interested parties. *In re Gold,* 410 B.R at 370 fn. 16 (citing 11 U.S.C. § 1501(a)(3) to emphasize the primary purpose of a Chapter 15 proceeding as to provide a venue for the "fair and efficient administration of cross border insolvencies that protects the interest of all creditors, and other interested entities, including the debtor."). Moreover, the mere fact that a foreign representative "must generally act as an officer of the court and thus impliedly owes a duty to all creditors" is insufficient to satisfy the rigid "collective in nature" element. *In re Gold,* 410 B.R. at 371.

### b.  *The Bahamian and St. Vincent Proceedings are Not "Collective in Nature"*

Here, neither the Bahamian nor St. Vincent Proceeding is "collective in nature" because they were not initiated for the benefit of all creditors and do not sufficiently consider the interests of all of BAICO's creditors.  The subject proceedings were initiated only to protect the interest

of a single class of creditors, the policyholders. Although, the Orders appointing LOPEZ and GLASGOW permit them to deal with other creditors, they are in no way obligated to act in those creditors' best interests. This is evidenced by the clear mandate in the Orders appointing LOPEZ and GLASGOW that they recommend the courses of action that **"are most advantageous to the general interests of the policy holders of the Company."** Petitioners do not dispute this fact.

During LOPEZ's deposition he agreed that the "primary purpose [of his appointment] is to take steps that are in the **best interest of the policyholders**." Juan Lopez Deposition Transcript at 34:15-18. A true and correct copy of relevant portions of Juan Lopez' Deposition Transcript are attached hereto as **Exhibit "C."** Moreover, during the November 6, 2009 hearing, GLASGOW's defined the scope of his duties as follows: "to take control of the assets, to manage the company, **to protect the interest of policy holders,** and to do all things in relation to these duties." November 6, 2009 Hearing Transcript at 162:17-21. A true and correct copy of relevant portions of the November 6, 2009 Hearing Transcript are attached hereto as **Exhibit "D."** Petitioners' arguments that the Orders appointing them permit them to consider the interests of other creditors and that they generally owe some duty to other creditors is insufficient to satisfy the strict "collective in nature" element. *See In re Gold,* 410 B.R. at 371. This is particularly true in the Bahamian Proceeding where creditors have yet to be given the opportunity to file proofs of claims. November 6, 2009 Hearing Transcript at 175:2-6.

Petitioners' recommendations to the foreign courts and the courts' acceptance of same confirm that the subject proceedings consider only the interests of certain policyholders and are in no way "collective in nature." For instance, Petitioners recommended the formation of a new company ("New Co.") through which the Eastern Caribbean Governments would provide

"financial support **to the remaining policyholders.**"   Report of the Judicial Manager of St Vincent & the Grenadines Branch (the "SVG JM Report") at § 8.5.   A true and correct copy of the SVG JM Report is attached hereto as **Exhibit "E."** GLASGOW explained that New Co would only assume certain assets and liabilities of BAICO and that **"[i]f a creditors' claims are not assumed by New Co, then they would not benefit"** by the influx of capital into New Co. Glasgow Deposition Transcript at 77:16-17.   A true and correct copy of relevant portions of the 1/11/10 deposition transcript of Brian Glasgow are attached hereto as **Exhibit "F".**  As to the specific assets and liabilities to be assumed, GLASGOW stated that "New Co **only envisions** taking over the operations of the Eastern Caribbean ("EC") Branches" and therefore branches outside of the EC, such as the Panama Branch, and subsidiaries will not be assumed. Glasgow Deposition Transcript 65:18-23. BAICO's reason for excluding non-EC operations is that "[t]he Eastern Caribbean government[s] are focusing on the Eastern Caribbean countries at this moment." Glasgow Deposition Transcript at 66:1-2.   As such, the only liabilities that will be transferred to New Co will be policies that were written in the EC Branches and other liabilities legitimately attributed to the EC Braches.  GLASGOW further stated that the pool of assets that will be used to satisfy the liabilities transferred to New Co. may include EC real estate, government bonds, T-bills from the EC governments, some cash, **U.S. assets,** and inter-company assets. Glasgow Deposition Transcript 68:2 – 69:8.  This explanation makes it eminently clear that Petitioners have only taken into account the interests of EC creditors and recognition of the subject proceedings will give them the unfettered discretion of satisfying non-U.S. creditors' claims with U.S. assets, without regard to the claims of U.S. creditors.

   c.  *The Proceedings are Not "For the Purpose of Reorganization or Liquidation" as Contemplated by the U.S. Bankruptcy Code*

Even if the Court were to conclude that the subject proceedings sufficiently consider the interests of all creditors, the fact remains that neither proceeding is "for the purpose of reorganization or liquidation" **as contemplated by the Code**.   Although now more strictly construed, the element which survived §101(23)'s amendment is the requirement that the proceeding in the foreign jurisdiction have the essential characteristics of proceedings . . . described elsewhere in the Code, such as a Chapter 11 reorganization." *In re Rose,* 318 B.R. 775. As this Court emphasized during the December 1, 2009 hearing, the "gate-keeper" provisions of Chapter 15 were intentional so that "only certain proceedings get recognized under Chapter 15, [such as] those same proceedings [that] would be recognized in other courts worldwide, who have adopted similar provisions." December 1, 2009 Hearing Transcript at 38:12-16.

The St. Vincent Proceeding, cannot be considered to be "for the purpose of liquidation or reorganization" of BAICO because the proceeding only pertains to one of BAICO's branch operations. As GLASGOW has explained, BAICO's operations in St. Vincent cannot be subject to a bankruptcy-like proceeding because a branch cannot be wound-up and therefore "the only winding up that could be done, could be of the ultimate legal entity which was in the Bahamas." November 6, 2009 at 174:22-24. As such, it appears as though the St. Vincent Proceeding is no more than a receivership for a portion of BAICO's assets and affairs.

Moreover, GLASGOW's testimony established that his appointment as a Judicial Manager is unlike any position contemplated by the Code or even his prior position as a Provisional Liquidator in *Tri-Continental.*  Specifically, he explained that a Judicial Manager is a unique concept that *only* appears in the Insurance Act and is merely "a form of administration" permitting the Judicial Manager to make recommendations to the Court.  Glasgow Deposition

Transcript at 12:9 – 13:10. The most significant difference between the St. Vincent Proceeding and any type of proceeding found in the Code is its lack of any procedures to safeguard the interests of general creditors such as GREEN ISLAND.

GLASGOW explained that the Insurance Act under which he was appointed and which governs the St. Vincent Proceeding: (1) does not require that notice of his appointment be given to creditors; (2) has not given him the task of inviting creditors to file claims; (3) has not given him the task of determining how creditor's claims will be paid; and (4) does not set up a process under which BAICO creditors may file proofs of claims. Glasgow Deposition Transcript at 52:23 – 53:13, 63:2-6. Although, he contends that the UK Insolvency Act provides for some of these shortcomings, none of the Orders issued in the St. Vincent Proceeding mention the UK Insolvency Act, nor does the Order appointing GLASGOW assign him the task of complying with its provisions.    As such, the St. Vincent Proceeding is not "for the purpose of reorganization or liquidation" as contemplated by the Code.

Petitioners' attempt to equate the Bahamian Proceeding with a Chapter 11 reorganization is also unavailing. In support of their assertion that the Bahamian Proceeding is "for the purpose of reorganization or liquidation," Petitioners assert that: (1) the Bahamian Court's order found that BAICO is insolvent and should be reorganized and wound-up; (2) that LOPEZ was granted practically the same powers as a Chapter 11 trustee or debtor-in-possession; and (3) that BAICO's assets would be reorganized and liquidated to equitably compensate its creditors in accordance with a statutory scheme of priority to preserve BAICO's value. Supplemental Brief at 12-13. These conclusory allegations fall well-short of satisfying Petitioners' burden of proof, particularly in light of the court's preliminary approval of that the New Co. concept, which only

benefits a small class of creditors. Moreover, the lack of any participation or voice on behalf of non-EC creditors, such as GREEN ISLAND, is manifestly contrary to the public policy in the United States and implicates this Court's authority to refuse recognition under §1506.

As GLASGOW explained in his deposition and as evidenced by the Orders issued in the Bahamian and St. Vincent Proceedings, although the recommendations were preliminarily adopted, specific schemes to implement the formation of New Co. have not been confirmed and in fact, legal analysis is still required to determine whether such a scheme is feasible. Glasgow Deposition Transcript at 56:23-57:10, 80:22 – 81:4; SVG JM Report at 8.4.2; St. Vincent Order dated 12/18/09 attached hereto as **Exhibit "G."** Accordingly, the Petitioners have remained as judicial managers, specific creditors have yet to be notified on the pending proceedings, and the Proceedings do not "have the essential characteristics of proceedings . . . described elsewhere in the Code." *In re Rose,* 318 B.R. 775. As such, the subject proceedings do not satisfy the requirements of § 101(23).

2.   The Code Contemplates Three Types of Foreign Proceedings

In the event a court concludes that a pending proceeding meets the §101(23) definition of a "foreign proceeding," it must then determine whether the proceeding is: (1) a foreign main proceeding; (2) a foreign nonmain proceeding; or (3) a proceeding that is neither a main nor nonmain proceeding. *In re Tradex Swiss AG,* 384 B.R. 34, 42 (Bank. D. Mass. 2008). The "critical distinction between a foreign proceeding that is "neither main nor nonmain" and a "foreign main" or "foreign nonmain" proceeding is that the former lacks a debtor's "establishment." *Id.* at 42. Succinctly, if the debtor has not engaged in sufficient non-transitory economic activity in the subject jurisdiction prior to seeking recognition, then the proceeding

cannot be recognized. *See In re Bear Stearns I*, 389 B.R. at 334 ("If the debtor does not have its center of main interests **or at least** an establishment in the country of the foreign proceedings, the bankruptcy court should not grant recognition") (emphasis added).

a. *The Bahamian Proceeding is Not a "Foreign Main Proceeding"*

Even if this Court were to consider the Bahamian Proceeding a "foreign proceeding" under § 101(23), LOPEZ is unable to establish that it is either a "foreign main proceeding" or a "foreign nonmain proceeding" as defined by §1502. As noted above, a "foreign main proceeding" requires that the debtor maintain its **"center of its main interests"** ("COMI") in that country. §1502(4). **"In the absence of evidence to the contrary**, the debtor's registered office. . . [is presumed] to be the center of the debtor's main interests." (emphasis added).

Although this presumption was intended for speed and convenience purposes **in cases where there was no real controversy**, it does not relieve the petitioner of his burden even in unopposed cases. *In re Sphinx, Ltd.*, 371 B.R. 10, 18 (S.D.N.Y 2007); *In re Bear Stearns II*, 389 B.R. at 336. Furthermore, the location of the registered office **"does not otherwise have special evidentiary value** and does not shift the risk of nonpersuasion, i.e. the burden of proof, away from the foreign representative." *Tri-Continental Exchange, Ltd.*, 349 B.R. 627, 636 (E.D. Cal. 2006) (emphasis added). In any event, as this Court has already noted, the presumptions applicable in this case have been overcome. December 1, 2009 Hearing Transcript at 39:18-20.

A debtor's COMI has been equated to the United States' concept of **"principal place of business"** and further defined as "the place where the debtor conducts the administration of his interests **on a regular basis** and is therefore ascertainable by third parties." *In re Betcorp, Ltd.*, 400 B.R. at 287. In determining the COMI, courts consider factors such as: (1) the location of

the debtor's headquarters; (2) the location of those who actually manage the debtor; (3) the location of debtor's primary assets; (4) the location of the majority of the debtor's creditors or those creditors who would be affected by the case; and (5) the jurisdiction whose law would apply **to most disputes**. *In re Bear Stearns,* 389 B.R. at 336.

Here it is without question that BAICO's COMI is not in the Bahamas. In fact, the Introduction paragraph to the Judicial Manager Report filed in the St. Vincent Proceeding clearly and unambiguously states that **"[BAICO's] main business operations is now located in Trinidad & Tobago, since its majority shares were acquired by the Trinidadian company CL Financial Ltd."***See* SVG JM Report at 3.2. When asked, GLASGOW agreed that this is an accurate statement and explained that it means that BAICO, although incorporated in the Bahamas, has had its main business operations in Trinidad since 1997. Glasgow Deposition Transcript at 20:25-21:2. He elaborated by explaining that:

(1) the consolidation of financial records was performed **in Trinidad**;

(2) corporate directives from the Board of Directors to BAICO's various branches came **from Trinidad**;

(3) substantial claims adjustment was referred to and performed **in Trinidad**;

(4) the St. Vincent Branch would transfer funds **to Trinidad** when requested to do so by the financial managers **in Trinidad**;

(5) all centralized activities such as; company investments, loss adjustment, consolidation of financial reporting, drafting of insurance policies and contracts, preparation of branch brochures, high level marketing, and corporate decisions about types of products that can be sold were performed **in Trinidad**; and

(6) the majority of BAICO's board of directors resided **in Trinidad**, while none resided

in the Bahamas.

Glasgow Deposition Transcript at 20-29.

Moreover, LOPEZ explained that corporate directors were based in Trinidad and "overall corporate control for centralized accounting and things like that" were performed in Trinidad. (Lopez D.T. at 85:5-18). As such, it is undeniable that if BAICO had a principal place of business anywhere, the only place it could be is Trinidad. As such, the Bahamian Proceeding should not be recognized as a "foreign main proceeding."

Notwithstanding these facts, Petitioners allege in their Supplemental Brief that BAICO's "principal place of business was, without question, in the Bahamas." Supplemental Brief at 17. This assertion is based on their flawed interpretation of a portion of a court's opinion in *In re Betcorp.* Essentially Petitioners allege that *In re Betcorp* stands for the proposition that in determining COMI, the this Court should not look BAICO's operational history **at all** and focus exclusive on the activities performed by LOPEZ between his appointment in September of 2009 and the filing of the his petition with this Court in October of 2009. This conclusion is completely at odds with any concept of a company's primary place of business.

The court in *In re Betcorp* explained that common sense must be used when considering the location of a debtor's COMI, citing the case of *In re Ran,* 390 B.R. 257 (Bank. S.D. Tex. 2008) as an example. In *In re Ran,* the debtor was the CEO of an Israeli company until 1997. In 1997, he moved to the United States where he worked until 2007, when a petition for recognition of an Israeli proceeding naming him as a debtor was filed. The Court concluded that at the time of the petition for recognition, the debtor's COMI was no longer in Israel. *In re Ran,* is

strikingly similar to the instant Chapter 15 proceeding in which BAICO had a significant presence in the Bahamas until 1997, however, since that time virtually no activity occurred in the Bahamas.  Moreover, all objective factors indicate that BAICO's COMI is not in the Bahamas.

Petitioners' counsel attempts to describe LOPEZ's activities as a court appointed Judicial Manager for the one month preceding his Petition in such a way as to indicate that BAICO's COMI is in the Bahamas.  As explained by the Court in *In re Bear Stearns II,* activities performed by third parties such as auditing and preparing documents, do not constitute "operations" or "economic activity."  389 B.R. at 338-39.  Moreover, the mere fact that a company is registered and licensed to do business in a particular jurisdiction does not establish that its COMI is in that jurisdiction, particularly when the same entity is licensed to and in fact conducts all of its business in other jurisdictions.

### b.   *The Bahamian Proceeding is Not a "Foreign Nonmain Proceeding"*

Due the fact that BAICO's COMI is not located in the Bahamas, the Lopez Petition could be recognized if LOPEZ can prove that the Bahamian Proceeding is as a "foreign nonmain proceeding."  Section 1502(5) defines a "foreign nonmain proceeding" as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an **establishment**." (emphasis added).  An "establishment" is defined in § 1502(2) as "any place of operations where the debtor carries out a **nontransitory economic activity**."  The requirement that there be at least an establishment in the jurisdiction, evinces Congress' intent "that a foreign proceeding should not be entitled to direct access to or assistance from the host country courts **unless the debtor had a sufficient pre-petition economic presence in the country** of the foreign proceeding." *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund,*

*Ltd.,* 389 B.R. 325, 333-34 (S.D.N.Y. 2008) (emphasis added). Again, the "establishment" element requires LOPEZ to prove that BAICO had a **pre-petition** "place of operations" in the Bahamas in BAICO conducted "nontransitory economic activities." LOPEZ cannot meet this burden.

At the November 6, 2009 hearing, LOPEZ stipulated to the fact that for several years leading up to his appointment:

(1) there were no officers, directors, or even employees in the Bahamas;

(2) the only office in the Bahamas was that of BAICO's registered agent;

(3) BAICO's in house legal department was in Trinidad and not in the Bahamas;

(4) **that BAICO was not issuing or selling insurance policies in the Bahamas**; and

(5) **that BAICO did not maintain any bank accounts in the Bahamas**.

November 6, 2009 Hearing Transcript at 67-76.

BAICO is an insurance company. Therefore, the fact that it has not issued or sold any insurance policies in the Bahamas for over ten years and does not maintain any bank accounts in the Bahamas, demonstrates that it is not engaged in any nontransitory economic activity in the Bahamas. As such, the Bahamian Proceeding is not a "foreign nonmain proceeding" and falls within the third type of foreign proceeding, which cannot be recognized under Chapter 15.

      *c.*  *St. Vincent Proceeding Does Have an Establishment*

Although it appears that the St. Vincent Proceeding is neither "collective in nature" nor "for the purpose of reorganization or liquidation" as contemplated by the Code, GREEN ISLAND does not dispute that BAICO has an establishment in St. Vincent and the Grenadines. It should be noted, however, that the Order appointing GLASGOW as a judicial manager

specifies that **only** "[t]he affairs, business and property of British American Insurance Company Limited (the "Company") **in Saint Vincent and the Grenadines** be placed in Judicial Management." GLASGOW confirmed that this was his understanding of his appointment. Glasgow Deposition Transcript at 63:15-22. Therefore, in the event that the Court determines that the St. Vincent Proceeding meets the requirements of §101(23) and recognizes it as a "foreign nonmain proceeding," relief under §1521 should be limited to the St. Vincent Branch's assets. As GLASGOW explained, the St. Vincent Branch does not directly have any assets in the United States. Glasgow Deposition Transcript at 63:15-22. Therefore, this Court should not extend §1521 relief to any of BAICO's assets in the United States.

WHEREFORE, Creditor, GREEN ISLAND HOLDINGS, LLC., respectfully requests this Court enter an Order denying Juan Lopez' and Brian Glasgow's Verified Petitions for Recognition, or in the alternative if Brian Glasgow's Petition is granted, to deny any request for the extension of relief to the proceedings involving or assets belonging to British American Isle of Venice, for such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF on January 26, 2010 upon: **Leyza F. Blanco, Esq.,** Gray Robinson, P.A., Counsel for Judicial Managers Juan M. Lopez a/k/a John M. Lopez and Brian Glasgow, 1221 Brickell Avenue, Suite 1600, Miami, Florida 33131.

## CERTIFICATE OF ADMISSION

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this court set forth in Local Rule 2090-1(A).

Dated: January 26, 2010.

The DuBosar Law Group, P.A.
Attorneys for Creditor, Green Island Holdings, LLC
120 East Palmetto Park Road, Suite 100
Boca Raton, Florida 33432
Phone: (561) 544-8980
Fax: (561) 544-8988

By:_____ /s/ Howard D. DuBosar_____
Howard D. DuBosar
Florida Bar No. 729108